Mr. Justice DAVIS
delivered the opinion of the court.
The species of securities ou which this suit is brought has been frequently before this court for consideration, and there are very few questions connected with them that have not been decided. This action involves the validity of the bonds or scrip issued by the defendant in aid of the Kenosha and Beloit Railroad Company. In "Wisconsin there is nothing in the organic law restraining the legislature froni *200 conferring on municipal corporations the power to subscribe for stock in a railroad or other work of public improvement; and the highest court of the State has sustained the validity of securities given for such purposes by towns and cities benefited by their construction, where the .power to do so had been granted by the General Assembly.*
But it is insisted the bonds in controversy were executed and issued without the authority of law previously conferred, and therefore the city of Kenosha must be relieved from their payment.
The question presented is an important one; but, in our opinion, easily solved, when the whole legislation on the subject is taken into consideration. On the 22d day of March, 1853, an act of the legislature was passed authorizing the city, if a majority of the people voted for it, to issue its corporate bonds, not exceeding $150,000, to aid in the construction of the Kenosha and Beloit Kailroad, and to levy taxes to pay for them; and provision was made that the railroad company should secure the city, by a lien on its property, when the bonds were executed and delivered to them. This law conferred full power on the city to contract an indebtedness (limited in amount) for the promotion of a work of internal improvement, of common benefit to all-its inhabitants. A majority of the people did vote to extend the required aid, and the city issued its obligations and delivered them to the company, taking in exchange certificates of stock and indemnity against loss. All parties rested in the belief that these proceedings were according to law, and the secü-„ rities were negotiated in good faith, and the city received the benefit of them. So far as the corporate authorities could ratify them, they have done it, by a series of unmistakable acts: by voting to levy taxes; redeeming a portion of the securities first issued, and exchanging the residue for new' ones; issuing scrip in settlement of unpaid interest, and selling the securities obtained from the company by way of indemnity.
*201 The city also, in pursuance óf au express act of the legislature, evidently passed to protect the very interests created by the subscription to the capital stock of the road, elected a commissioner to represent it in the meeting of the board of directors, vote its shares of stock, and exercise a general oversight over its affairs in connection with the road.
But it is insisted, that the holders of these bonds or scrip (which is the form the securities assumed) cannot recover, because the common council, in submitting to the legal voters the question of 'whether a tax of $150,000' should be levied and collected to aid the Kenosha and Beloit Kailroad, declared, by ordinance, that the question was submitted in accordance with the provisions of section eight of “ an act to .amend the charter of the city,” approved March 28,1853, and section forty-four of “an act to incorporate the city,” approved February 8, 1850. It is unnecessary to notice the latter-named section, as the consideration of the first one is alone material to the subject of this inquiry.
Section eight of the amended charter authorizes the city council of Kenosha to levy and collect special taxes to any amount, aud for any purpose, which may be considered essential to promote or secure the common interest of the city; and it is contended that it is in conflict with the third 'section of-the eleventh. article of the Wisconsin constitution, aud that the proceedings of the common council under it cannot be sustained. The Wisconsin constitution provides that the legislature, in organizing municipal corporations, shall restrict their power to tax, assess, borrow money, contract debts, and loan their credit. The provision was a wise one, and has undoubtedly tended lo prevent abuses on the part of incorporated cities and villages, in levying taxes and raising money.
The Supreme Court of the State, in the interpretation of the foregoing provision of the constitution,* has declared that the legislature could not confer on a municipal corporation unlimited power to levy taxes and raise money, beyond *202 what was proper for purely municipal purposes; and as this was attempted to be done in section eight of the amended charter of the city of Kenosha, that the taxes levied uuder it, to aid the Kenosha and Beloit Railroad, were unauthorized, and the city authorities could be restrained from collecting them at the.instance of a party interested. This is the extent of the decision. ' The learned court expressly declined to decide whether the scrip issued by the common council to aid the road was valid or not.
In fact, the whole decision is based on the unconstitutionality of section eight, above referred to, which, as it purported to confer upon the city unlimited powers to levy taxes and borrow money, was in violation of the constitution of the State. The court say that “ the suit was by Foster in his own behalf, and in behalf of other land-owners, to restrain the city of Kenosha from collecting a special tax of $18,625, levied by the city upon the real estate therein situated, for the purpose of paying a debt originally contracted by the stock subscriptions of the city to the Kenosha and Beloit Railroad Company.” This is all that appears in the report of the case, as to the character of the suit. It is apparent that the special act of the legislature authorizing the subscription, and the further amendment to the charter of the city substantially ratifying it, were not before the court. They are not referred to in the opinion of the court, aud the fair presumption is, that they were not referred to in the pleadings, as the purpose which the complainant had in view did not require that they should’be. We are, therefore, unembarrassed by any adverse decision upon the character of the securities in suit, aud the question of their validity is an open one for discussion and decision.
It is manifest, that the common council of Kenosha did not attempt the exercise of the unlimited power to raise money conferred on them, because they limited the amount to be raised to the exact sum, which the legislature, by an, express act, authorized. Under the provisions of this act, ample power was given to accomplish the object which the city had in view — aiding to build a railroad which would *203 bring trade and travel to it. By the very terms of this act, the subscription of $150,000 could be made, and taxes levied to pay for it, if the people voted in favor of it. It is com ceded, if the submission had been in words under the special act, instead of the amended charter, all controversy would be at an end.
It is argued, notwithstanding there was complete authority to raise the money and levy the taxes under a valid law, yet, as the common council,' in. taking the vote, named a provision of their charter, which is invalid, that, therefore, not only the payment of the tax can be avoided, but also the payment of the scrip.
Whether this position is well taken or not the necessities of the case do not require to be decided, for, in our opinion, subsequent legislation has cured all antecedent irregularities.
In 1857, after the scrip had been issued to the railroad company, under the proceedings of the common council; the legislature passed a revised charter for the city. Among other things, provision was made for the election of a rail road commissioner, annually, as a city officer. There had been previous legislation in relation to this officer, but his duties and powers by the revised charter wore much enlarged. He was constituted, ex-officio, a member of the board of directors of the Kenosha and Beloit K-ailroad, with power of voting as an individual stockholder, and, in addition, was required to receive from the city treasurer all moneys which were paid on account of the tax for the road, and commanded to redeem all scrip which had been issued to the company as the same became due, making such provision for it, or recommending such measures to the common council as he should deem necessary for the benefit of the tax-payers of the city.
This is not in terms a curative act, but it has that effect by fair implication. It is not doubted the legislature could, by a direct act of confirmation,-legalize the issue of tlii® scrip, notwithstanding the submission of the question to the vote of the people was under the wrbng law. If by a direct *204 act, equally in any other way, if the intention of the legislature to legalize, clearly appears.
It is conceded the legislature had the right to authorize the city of Kenosha to take stock in a railroad, issue bonds to pay for it, and provide for their redemption by the levy and collection of a tax. It did authorize these things to be done, if the people approved them; but as their sanction was obtained in the wrong way, thereby involving the legality of their proceedings, good faith and sound policy required, at the hands of the legislature, a full legislative recognition of the legality of the subscription and the issue of the scrip. This was done by the provisions of the revised charter of 1857.
Of such importance did the legislature consider the interests of Kenosha in the railroad to Beloit that a commissioner, of the dignity of a city officer, was deemed necessary to look, to them. And that the legislature iutended to ratify the proceedings of the common council, which resulted in the subscription of stock to the railroad and issue of scrip, is very clear, else why was the commissioner directed to provide for the payment of the scrip as it matured ? The words of the laware imperative. The commissioner shall redeem the scrip. Surely the legislature would not command this to be done- unless it intended to recognize the validity of the scrip.
“ To redeem all scrip which had been issued to said railroad company as the same became due” — the very words of the law — can mean nothing else than that such issue of sci’ip had received legislative sanction, and, in the opinion of the law-makers, ought to be paid.
If this is so, the ratification of the disputed proceedings of the common council is as complete as if they had been particularly named, and their issue of scrip is relieved from all taint of illegality.
After the revised charter was given to the city, the common council, at different times, and in various ways, recognized the validity of the scrip, and finally, in June, 1859, Bettled with some of the holdeiis of it, who were willing to *205 extend the time for payment — taking up the old securities and issuing new.
This suit is brought upon the scrip received on that settlement, and we think the learned court below erred in excluding it from the jury.
The judgment of the Circuit Court is reversed with costs, and the cause is remanded to the court below, with instructions to issue
A VENIRE DE NOVO.

 Clark v. City of Janesville, 10 Wisconsin, 136; Bushnell v. City of Beloit, Id. 195.

 Foster v. City of Kenosha, 12 Wisconsin, 616.